IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| KATHY LYNNE CANTU, | § | |
| | § | |
| Plaintiff, | § | |
| | § | Civil Action No. 3:15-CV-0267-D |
| VS. | § | |
| | § | |
| CAROLYN W. COLVIN, ACTING | § | |
| COMMISSIONER OF SOCIAL | § | |
| SECURITY, | § | |
| | § | |
| Defendant. | § | |

MEMORANDUM OPINION

Plaintiff Kathy Lynne Cantu ("Cantu") brings this action under § 205(g) of the Social Security Act, 42 U.S.C. § 405(g) (the "Act"), for judicial review of the final decision of the Commissioner of Social Security ("Commissioner") denying her claim for supplemental security income ("SSI") under Title XVI of the Act.  For the reasons that follow, the Commissioner's decision is affirmed.

I

Cantu filed an application for SSI under Title XVI of the Act in May 2012, alleging a disability beginning June 8, 2009 due to a back surgery and a bad neck, leg, and shoulder. Cantu was born in September 1960, making her 51 years old on her application filing date. The Commissioner denied Cantu's application initially and on reconsideration.  Following a hearing, the administrative law judge ("ALJ") found that Cantu is "not disabled."  The Appeals Council denied Cantu's request for review, and the ALJ's decision became the final decision of the Commissioner.

In making his decision, the ALJ followed the five-step sequential process prescribed in 20 C.F.R. § 416.920(a).  At step one, he found that Cantu has not engaged in substantial gainful activity since May 10, 2012, her application filing date.  At step two, the ALJ found that Cantu has severe impairments of lumbar degenerative disc disease, cervical degenerative disc disease, lumbar spine myofascitis, shoulder myofascitis, schizoaffective disorder, and obsessive compulsive disorder.  At step three, the ALJ found that Cantu's impairments failed to meet or equal a listed impairment for presumptive disability under 20 C.F.R. Part 404, Subpart P, Appendix 1.  The ALJ found that Cantu has the residual functional capacity ("RFC")

> to lift and carry 20 pounds occasionally and 10 pounds frequently, stand and walk for six hours out of an eight-hour workday, and sit for six hours out of an eight-hour workday, limited by occasional climbing ramps and stairs, stooping, and crouching.  [Cantu] is further limited to no climbing ladders, and only occasional reaching with her non-dominant left upper extremity.  She retains the ability to understand, remember and carry out simple tasks.

R. 15.  At step four, the ALJ found that Cantu cannot perform her past relevant work as an office manager (skilled).  At step five, where the burden shifts to the Commissioner, the ALJ found, based on the vocational expert's ("VE's") testimony, that Cantu is capable of performing other jobs existing in significant numbers in the national economy, such as a children's attendant, counter clerk, and investigator.  Accordingly, the ALJ concluded that Cantu had not been under a disability at any time between May 10, 2012 (the application filing date) and January 27, 2014 (the date of the ALJ's decision).

Cantu maintains on four grounds that the Commissioner's decision must be reversed: the ALJ failed to include one of Cantu's limitations in his RFC determination, did not properly weigh the opinion evidence, failed to adequately assess Cantu's credibility, and posed an incomplete hypothetical question to the VE.

## II

The court's review of the Commissioner's decision is limited to determining whether substantial evidence supports the decision and whether the Commissioner applied the proper legal standards to evaluate the evidence. *Ripley v. Chater*, 67 F.3d 552, 555 (5th Cir. 1995); *Martinez v. Chater*, 64 F.3d 172, 173 (5th Cir. 1995) (per curiam). "The Commissioner's decision is granted great deference and will not be disturbed unless the reviewing court cannot find substantial evidence in the record to support the Commissioner's decision or finds that the Commissioner made an error of law." *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995) (footnotes omitted).

"The court may not reweigh the evidence or try the issues de novo or substitute its judgment for that of the [Commissioner]." *Kane v. Heckler*, 731 F.2d 1216, 1219 (5th Cir. 1984) (citations omitted). "If the Commissioner's findings are supported by substantial evidence, then the findings are conclusive and the Commissioner's decision must be affirmed." *Martinez*, 64 F.3d at 173. "Substantial evidence is 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). "It is more than a mere scintilla, and less than a preponderance." *Spellman v. Shalala*, 1 F.3d

357, 360 (5th Cir. 1993) (citing *Moore v. Sullivan*, 919 F.2d 901, 904 (5th Cir. 1990) (per curiam)). "To make a finding of 'no substantial evidence,' [the court] must conclude that there is a 'conspicuous absence of credible choices' or 'no contrary medical evidence.'" *Dellolio v. Heckler*, 705 F.2d 123, 125 (5th Cir. 1983) (citation omitted). Even if the court should determine that the evidence preponderates in the claimant's favor, the court must still affirm the Commissioner's findings if there is substantial evidence to support these findings. *See Carry v. Heckler*, 750 F.2d 479, 482 (5th Cir. 1985). The resolution of conflicting evidence is for the Commissioner rather than for the court. *See Patton v. Schweiker*, 697 F.2d 590, 592 (5th Cir. 1983) (per curiam).

For purposes of social security determinations, "disability" means an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). In determining whether an applicant is disabled, the Commissioner follows a five-step sequential analysis. *See, e.g., Perez v. Barnhart*, 415 F.3d 457, 461 (5th Cir. 2005). If the Commissioner finds that the claimant is disabled or is not disabled at any step in the analysis, the analysis is terminated. *Id.* Under the five-step sequential inquiry the Commissioner considers whether (1) the claimant is presently engaged in substantial gainful activity, (2) the claimant's impairment is severe, (3) the claimant's impairment meets or equals an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, (4) the impairment prevents the claimant from doing past relevant work, and (5) the claimant cannot presently

- 4 -

perform relevant work that exists in significant numbers in the national economy.  *See, e.g.,*
*Leggett*, 67 F.3d at 563 n.2; *Martinez*, 64 F.3d at 173-74; 20 C.F.R. § 404.1520(a)(4).  "The
burden of proof is on the claimant for the first four steps, but shifts to the [Commissioner]
at step five."  *Bowling v. Shalala*, 36 F.3d 431, 435 (5th Cir. 1994) (per curiam) (citing
*Anderson v. Sullivan*, 887 F.2d 630, 632-33 (5th Cir. 1989) (per curiam)).  At step five, once
the Commissioner demonstrates that other jobs are available to a claimant, the burden of
proof shifts to the claimant to rebut this finding.  *Selders v. Sullivan*, 914 F.2d 614, 618 (5th
Cir. 1990) (per curiam).

When determining the propriety of a decision of "not disabled," this court's function
is to ascertain whether the record considered as a whole contains substantial evidence that
supports the final decision of the Commissioner, as trier of fact.  The court weighs four
elements of proof to decide if there is substantial evidence of disability: (1) objective medical
facts; (2) diagnoses and opinions of treating and examining physicians; (3) the claimant's
subjective evidence of pain and disability; and (4) age, education, and work history.
*Martinez*, 64 F.3d at 174 (citing *Wren v. Sullivan*, 925 F.2d 123, 126 (5th Cir. 1991) (per
curiam)).  "The ALJ has a duty to develop the facts fully and fairly relating to an applicant's
claim for disability benefits."  *Ripley*, 67 F.3d at 557.  "If the ALJ does not satisfy [this] duty,
[the] decision is not substantially justified."  *Id.*  Reversal of the Commissioner's decision
is appropriate, however, "only if the applicant shows that [she] was prejudiced."  *Id.*  The
court will not overturn a procedurally imperfect administrative ruling unless the substantive
rights of a party have been prejudiced.  *See Smith v. Chater*, 962 F. Supp. 980, 984 (N.D.

Tex. 1997) (Fitzwater, J.).

III

The court turns first to Cantu's contention that the ALJ failed to include in the RFC determination the functional limitation resulting from an impairment that the ALJ found to be severe at step two.

A

Cantu asserts that the ALJ erred in formulating her RFC by not accounting for her limited ability to use her right, dominant arm for reaching.  The ALJ found that Cantu's shoulder myofascitis was a severe impairment but limited her RFC to "only occasional reaching with her non-dominant left upper extremity."  R. 15.  Cantu maintains that the evidence in the record shows that the resulting limitation of her shoulder myofascitis is not confined to her left upper extremity, and that it supports a finding that her right upper extremity is similarly limited.  Cantu points to an evaluation by consultative examiner Harold Nachimson, M.D., J.D. ("Dr. Nachimson"), in which he found that her right shoulder had only 75% range of motion; a report that Cantu made to an examining nurse practitioner that she had swelling in her right arm, with shooting pain down her hand; and an observation by Andrew Kubin ("Kubin"), a physician's assistant, that she had right-side neck pain radiating into her posterior shoulder.  Cantu maintains that this evidence supports the finding that she experienced lasting functional impairment in her right upper extremity as well as her left.

The Commissioner responds that the record does not support this limitation.  She maintains that Dr. Nachimson was the only physician to find a limitation in Cantu's right

arm, and that even he found that Cantu retained 75% range of motion and full strength.  The

Commissioner also contends that 12 examination notes in the record explicitly state that

Cantu demonstrated no abnormalities in her arms.  In response to Cantu's assertion that she

complained to a nurse practitioner of right shoulder pain, the Commissioner posits that the

nurse practitioner found normal range of motion, gait, muscle strength, and muscle tone in

both arms.  Finally, the Commissioner asserts that Cantu cannot meet her burden of

demonstrating a disabling limitation merely by stating that she complained of symptoms or

sought treatment.  *See Hames v. Heckler*, 707 F.2d 162, 165 (5th Cir. 1983) (per curiam); *see

also Falco v. Shalala*, 27 F.3d 160, 163 (5th Cir. 1994).

                                                    B

        The court holds that the ALJ did not reversibly err by failing to include in the RFC

determination a limitation on Cantu's ability to use her right, dominant arm for reaching.

There is "no inherent contradiction in finding that [Cantu's] [shoulder myofascitis] is severe

at step two and also finding that [she] has no exertional limitations on working" with respect

to her right shoulder.  *Boothe v. Colvin*, 2013 WL 3809689, at *6 (N.D. Tex. July 23, 2013)

(Fitzwater, C.J.) ("Because the ALJ determines whether an impairment is severe without

regard to the individual's age, education, or work experience, finding that an impairment is

severe does not of itself mean that the impairment affects the claimant's ability to work.").

It was not contradictory for the ALJ to find that although the effect of shoulder myofascitis

on both of Cantu's shoulders was a severe impairment, her left arm is more limited than her

right arm.  Moreover, there is substantial evidence in the record to support this finding.

The ALJ noted that Dr. Nachimson—the only physician who found any limitation in Cantu's right arm—had diagnosed Cantu with, among other things, "shoulder myofascitis (*left worse than right*)."  R. 16 (emphasis added).  Dr. Nachimson also found that Cantu retained 75% range of motion in her right shoulder and 100% strength in her right upper extremity, but only 25-30% range of motion in her left shoulder and 80% strength in her left upper extremity.  *See Hames*, 707 F.2d at 165 ("The mere presence of some impairment is not disabling per se.  Plaintiff must show that she was so functionally impaired by her back trouble that she was precluded from engaging in any substantial gainful activity.").  The ALJ also noted that Cantu had "reported right shoulder pain," but that an "[e]valuation revealed normal range of motion, gait and muscle strength."  R. 17.  Additionally, physician assistant Kubin found that, although Cantu reported right-side neck pain radiating into her posterior shoulder, she had normal range of motion, no laxity in her shoulder, and an overall normal musculoskeletal system.  Numerous examination notes in the record explicitly state that Cantu had no abnormalities with respect to her right shoulder.

Moreover, the ALJ limited Cantu's RFC to "lift[ing] and carry[ing] 20 pounds occasionally and 10 pounds frequently" and "no climbing ladders," which is consistent with limitations in both arms.  *See Williams v. Astrue*, 2010 WL 517590, at *4 (N.D. Tex. Feb. 11, 2010) (Fitzwater, C.J.) (holding, *inter alia*, that ALJ had considered plaintiff's obesity when formulating RFC because ALJ "limited [plaintiff's] RFC to 'light capacity' work, which would likely be consistent with any obesity-related limitation").  Thus the ALJ's decision demonstrates that he considered limitations on Cantu's ability to use her right arm

when formulating her RFC, and substantial evidence supports his decision.

IV

Cantu asserts that the ALJ failed to weigh any of the opinion evidence in the record.

A

Cantu contends on two grounds that the ALJ did not adequately weigh medical opinion evidence, meaning, in turn, that his RFC determination is not supported by substantial evidence.  First, she posits that the ALJ should have afforded considerable weight to the opinion of therapist Sandra Hensley, Q.M.H.P., B.S. ("Hensley"), because of her relationship with Cantu at the clinic, the consistency of her opinion with the evidence in the record, and her specialization as a qualified mental health professional.[1]  Cantu argues that the ALJ is not allowed to ignore Hensley's opinion simply because she is not an "acceptable medical source."  *See Titles II and XVI: Considering Opinions and Other Evidence from Sources Who Are Not "Acceptable Medical Sources" in Disability Claims; Considering Decisions on Disability by Other Governmental and Nongovernmental Agencies*, SSR 06-03p, 2006 WL 2329939, at *1-3 (S.S.A. 2006) (hereinafter "SSR 06-03p").  Second, Cantu maintains that the ALJ erred by not discussing and explaining the weight he assigned to the

---

[1]The ALJ also discounted the opinion of chiropractor Jack LoCascio, D.C. ("Dr. LoCascio"), because "[h]is opinion is not supported by other medical evidence of record set forth in detail herein," and "[his] office indicated that there were no records found for [Cantu]."  R. 16.  Cantu does not appear to argue that the ALJ should have afforded more weight to Dr. LoCascio's opinion.  The court concludes, however, that the analysis used to determine whether the ALJ erred by discounting Hensley's opinion likewise applies to Dr. LoCascio's opinion, and, for similar reasons set out in *infra* at § IV(B), the court holds that the ALJ did not err by assigning little weight to the opinion of Dr. LoCascio.

opinions of state agency non-examining medical consultants, John Durfor, M.D. ("Dr. Durfor"), and Leela Reddy, M.D. ("Dr. Reddy"), which the ALJ appears to have relied on in determining the RFC.  *See* 20 C.F.R. § 416.927(e)(2).  Cantu asserts that this failure, especially concerning Dr. Durfor, is reversible error because it prevents a reviewer of the ALJ's decision from determining whether he improperly afforded controlling weight to a non-treating source.

The Commissioner responds that Hensley is not an "acceptable medical source" under 20 C.F.R. § 416.913(a), and that, while the regulations allow an ALJ to consider evidence from "other sources," such sources are not entitled to any particular deference. *See* 20 C.F.R. § 416.913(d).  The Commissioner asserts that the ALJ properly followed the regulations by considering the check-box form that Hensley completed and then discounting Hensley's opinion because her assessment was contradicted by evidence in the record, and she only saw Cantu once for an initial consultation.  The Commissioner points out that the ALJ has discretion to determine the credibility of the medical reports in the record.  *See Moore v. Sullivan*, 919 F.2d 901, 905 (5th Cir. 1990).

Regarding the state agency non-examining medical opinions, the Commissioner responds that an ALJ is not required to follow formalistic rules in articulating the evidence or even discussing all of the evidence accepted or rejected, and an ALJ must articulate reasons for rejecting a claimant's subjective complaints of pain only when the evidence clearly favors the claimant.  *See Falco*, 27 F.3d at 163.  The Commissioner maintains that the ALJ did not have to discuss Drs. Durfor's and Reddy's opinions because they disfavor

- 10 -

Cantu's claim.  *See id.*  Alternatively, the Commissioner contends that, assuming *arguendo* that the ALJ erred by not discussing these opinions, any failure is harmless error because both opinions support a non-disability determination.  The Commissioner points out that Dr. Durfor concluded that Cantu retained the physical RFC to perform a limited range of light work, which is consistent with the ALJ's determination, and Dr. Reddy found that Cantu's mental impairments caused marked limitations in her ability to understand, remember, and carry out detailed instructions, which the ALJ accounted for by limiting Cantu to simple work.

## B

The ALJ did not reversibly err by discounting Hensley's opinion.  As a therapist, Hensley is not an "acceptable medical source," and, as such, her opinion cannot be considered a "medical opinion," nor can it establish the existence of a "medically determinable impairment."  20 C.F.R. §§ 404.1513(a) (listing "acceptable medical sources"), 404.1527(a)(2) (explaining that "[m]edical opinions are statements from . . . acceptable medical sources"), 416.913(a) (stating that "[w]e need evidence from acceptable medical sources to establish whether you have a medically determinable impairment(s)"); *see also* SSR 06-03p, at *2 ("Information from these 'other sources' cannot establish the existence of a medically determinable impairment.").  Hensley's opinion, however, can be used in other ways, such as "provid[ing] insight into the severity of the impairment(s) and how it affects [Cantu's] ability to function."  SSR 06-03p, at *2.  "[T]he Act requires [the ALJ] to consider all of the available evidence in the individual's case record," which includes

opinions from non-acceptable medical sources. *Id.* at *4. When assigning weight to Hensley's opinion, the ALJ must consider certain factors, such as "[h]ow long the source has known and how frequently the source has seen the individual"; "[h]ow consistent the opinion is with other evidence"; and "[w]hether the source has a specialty or area of expertise related to the individual's impairment(s)." *Id.* at *4-5.

The court disagrees with Cantu's contention that the ALJ ignored or discounted Hensley's opinion simply because she was not an acceptable medical source. The ALJ recited Hensley's opinion, stated that he had "considered the opinion," and concluded that "[h]er opinion [was] not supported by other medical evidence of record." R. 19; *see, e.g., Cain v. Barnhart*, 193 Fed. Appx. 357, 362 (5th Cir. 2006) (per curiam) (discounting opinion of registered nurse that was not fully supported by the record). The ALJ noted that Hensley "stated [Cantu] had marked limitation in [her] ability to . . . understand and remember very short and simple instructions" and "maintain attention and concentration for extended periods," R. 19, but a nurse practitioner at Hensley's clinic found that "[Cantu's] memory was intact" and "[h]er concentration was good," R. 18; treating physician Mehmooda Nasir, M.D., found that "[Cantu's] memory and concentration were intact," R. 19; and other medical professionals reached similar conclusions, R. 17. The ALJ also stated that he had "considered opinion evidence in accordance with the requirements of 20 CFR 416.927 and SSRs 96-2p, 96-5p, 96-6p and 06-3p." R. 20. Finally, the record shows that Hensley saw Cantu only once, which provides additional support for discounting her opinion. *See* SSR 06-03p, at *4 (explaining that one factor the ALJ applies to opinion evidence from "other

sources" is "[h]ow long the source has known and how frequently the source has seen the individual"). The court holds that the ALJ followed the regulations in considering Hensley's opinion and permissibly exercised his discretion in assigning it little weight. *See Newton v. Apfel*, 209 F.3d 448, 455 (5th Cir. 2000) (quoting *Paul v. Shalala*, 29 F.3d 208, 211 (5th Cir. 1994)) ("'The ALJ is free to reject the opinion of any physician when the evidence supports a contrary conclusion.'"); *Herring v. Astrue*, 788 F.Supp.2d 513, 521 (N.D. Tex. 2011) (Fitzwater, C.J.) (quoting *Stearns v. Astrue*, 2010 WL 1072828, at *6 (N.D. Tex. Mar. 24, 2010) ("'[T]he task of weighing the evidence is the province of the ALJ,' and '[t]he relative weight to be given these pieces of evidence is within the ALJ's discretion.'").

C

The court holds that the ALJ erred by not explaining the weight he assigned to the opinions of state agency non-examining consultants, Drs. Durfor and Reddy. *See Policy Interpretation Ruling Titles II and XVI: Consideration of Administrative Findings of Fact By State Agency Medical and Psychological Consultants at the Administrative Law Judge and Appeals Council Level of Review*, SSR 96-6p, 1996 WL 374180, at *1-2 (S.S.A. 1996) (hereinafter "SSR 96-6p") ("[ALJs] and the Appeals Council may not ignore [state agency consultants'] opinions and must explain the weight given to these opinions in their decisions."); *see also Herring*, 788 F.Supp.2d at 520 (citing SSR 96-6p, at *1-2) ("[A]lthough ALJs are not bound by any findings made by state agency medical or psychological consultants, they must consider such findings as opinion evidence."). But this error is harmless, and therefore not reversible, "because the ALJ's conclusions are entirely

consistent with [Drs. Durfor's and Reddy's] opinions." *Herring*, 788 F.Supp.2d at 523 (assuming *arguendo* that ALJ erred by not discussing opinion of state agency non-examining medical source, and holding that error was harmless "because the ALJ's conclusions [were] entirely consistent with [the state agency non-examining medical source's] opinion"). Dr. Reddy found that Cantu was not significantly limited in her ability to understand, remember, and carry out short and simple instructions, but she was markedly limited in her ability to understand, remember, and carry out detailed instructions. Similarly, the ALJ found that "[Cantu] retains the ability to understand, remember and carry out simple tasks." R. 15. Dr. Durfor found that Cantu could occasionally climb stairs and ramps, stoop, and crouch and could never climb a ladder. The ALJ likewise determined that Cantu is "limited by occasional climbing ramps and stairs, stooping, and crouching" and "is further limited to no climbing ladders." *Id.* Dr. Durfor also found that Cantu's left shoulder is limited to occasional reaching due to shoulder pain and myofascitis with limitations in range of motion, but her right shoulder is unlimited, noting that Cantu retained 75% range of motion in her right shoulder and 100% strength in her right upper extremity. These findings are identical to those of Dr. Nachimson, Cantu's treating physician, which the ALJ discussed at great length and relied on to find that Cantu has, among other things, shoulder myofascitis and a limitation in her use of her left arm. Because the court can discern from the record that the ALJ considered and accepted the opinions of Drs. Durfor and Reddy, in conjunction with the opinions of treating sources and other evidence discussed in the decision, the ALJ did not commit reversible error by failing to discuss Drs. Durfor's and Reddy's opinions. *See*

- 14 -

*Herring*, 788 F.Supp.2d at 523 (concluding that "although the ALJ did not discuss every piece of potentially relevant evidence in each step of his analysis, this is not required").

V

Cantu maintains that the ALJ failed to properly evaluate her credibility.

A

Cantu posits that the ALJ's determination that she was not credible with respect to the intensity, persistence, and limiting effects of her symptoms is not supported by substantial evidence.  She maintains that despite the ALJ's obligation to comply with the *Policy Interpretation Ruling Titles II and XVI: Evaluation of Symptoms in Disability Claims: Assessing the Credibility of an Individual's Statements*, SSR 96-7p, 1996 WL 374186, at *2 (S.S.A.1996) , his findings are insufficient to find her not credible.  The ALJ stated that the "record reflects that [Cantu] has neck and back pain," but "physical findings have been minimal and [Cantu] has reported that her medications help reduce her pain."  R. 21.  Cantu maintains that this statement is "too vague and excludes the subtleties of [her] actual testimony in context."  P. Br. 16.  She also asserts that she testified that her lower back pain bothers her all the time, even when she regularly takes pain medication; that, even with medication, her lower back pain never gets below a four on a ten point scale; and that she took Ibuprofen 800 milligrams, naproxen, tramadol, and hydrocodone each day for her pain in order to even achieve that level of relief.  Finally, relying on the observations of Dr. Nachimson and physician assistant Kubin, Cantu argues that the record evidence shows more than minimal findings regarding her back and neck pain.

The Commissioner responds that the ALJ's determination that Cantu's subjective complaints were not fully credible is supported by evidence in the record. The Commissioner contends that the ALJ discussed the medical evidence, both favorable and unfavorable to Cantu, as well as Cantu's subjective complaints and testimony, and he correctly relied on examining sources (who consistently found that Cantu had no musculoskeletal abnormalities) to determine that her complaints were not credible to the extent that they were inconsistent with the RFC.

B

The court holds that the ALJ's credibility determination is sufficiently explained and supported by substantial evidence. Credibility determinations are generally left to the discretion of the ALJ, and the court will not overturn such a decision unless it is impermissibly vague or unsupported by the record. *See McGowan v. Astrue*, 2009 WL 2614487, at *4 (N.D. Tex. Aug. 25, 2009) (Fitzwater, C.J.); *see also R.M.C. v. Astrue*, 2011 WL 1792924, at *10 (N.D. Tex. May 11, 2011) (Fitzwater, C.J.) (citing *Villa v. Sullivan*, 895 F.2d 1019, 1024 (5th Cir. 1990)) (concluding that so long as the ALJ's decision is supported by substantial evidence, his determination of credibility is entitled to deference). In reviewing for substantial evidence, this court "[does] not reweigh the evidence or try the issues de novo," but it seeks to determine whether there "is more than a mere scintilla" of evidence. *Spellman*, 1 F.3d at 360 (citations and internal quotations omitted).

The ALJ found that Cantu's allegations regarding the intensity and persistence of her pain and the limiting effects of her symptoms, beyond those encompassed in the RFC, were

not credible because, while Cantu "has neck and back pain[,] . . . physical findings have been minimal and [Cantu] has reported that her medications help reduce her pain." R. 21. In making this determination, the ALJ noted that he had "considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence, based on the requirements of 20 CFR 416.929 and SSRs 96-4p and 96-7p." *Id.* at 20. The ALJ also pointed to specific evidence in the record supporting his credibility findings. He discussed two pieces of medical evidence that were inconsistent with Cantu's subjective complaints: first, "[Cantu's] cervical X-ray did show some significant stenosis at C4-5 but her physical examinations at Hope Clinic reported that her neck was supple and the review of systems showed no complaints with respect to her neck and back (Muscle ache-no);" and, second, "[t]here was a note for a referral to orthopedics on a visit in June 2013 but again there were no specific complaints noted with respect to pain for that visit." *Id.* at 21. The ALJ also detailed Cantu's complaints and stated that "[Cantu] testified that she takes multiple medications for her pain, which help some." *Id.* The ALJ properly considered and discussed medical opinions and evidence, in addition to Cantu's testimony, and exercised his discretion in finding Cantu's subjective complaints not fully credible.

VI

Finally, Cantu contends that the VE's testimony was based on an incomplete hypothetical question.

A

Cantu maintains that the ALJ's step five finding—that jobs exist in significant numbers in the national economy that she can perform—is not supported by substantial evidence because the ALJ made this determination by relying on the VE's testimony, which was based on an incomplete hypothetical. Cantu asserts that this is so because the ALJ used the RFC determination in the hypothetical, and the RFC determination was not supported by substantial evidence because the ALJ failed to include a limitation in her ability to use her right arm, weigh opinion evidence, and adequately assess her credibility. As a result, Cantu contends that the hypothetical failed to include the full range of limitations imposed by her impairments. *See Collins v. Astrue*, 2010 WL 4282082, at *4 (N.D. Tex. Sept. 29, 2010) (Roach, J.) (quoting *Bowling v. Shalala*, 36 F.3d 431, 436 (5th Cir. 1994) (per curiam)) ("'A hypothetical question posed to a vocational expert must . . . incorporate reasonably all disabilities of the claimant recognized by the ALJ[.]'"). Cantu also maintains that the ALJ should have relied on separate hypotheticals that he posed to the VE based on Hensley's and Jack LoCascio, D.C.'s ("Dr. LoCascio's") opinions, and on which the VE testified that there would be no jobs in the national economy that Cantu would be able to perform.

The Commissioner responds that the ALJ posed a valid hypothetical to the VE because the question included all of Cantu's impairments that were supported by the

evidence and recognized by the ALJ.  *See Masterson v. Barnhart*, 309 F.3d 267, 273 (5th Cir. 2002).

## B

The court concludes that the hypothetical the ALJ posed to the VE was complete.  The court has already held that, in formulating the RFC, the ALJ sufficiently considered Cantu's ability to use her right arm, weighed the opinion evidence, and assessed Cantu's credibility. Because the court already concluded that the ALJ properly exercised his discretion in discounting Hensley's and Dr. LoCascio's opinions, the ALJ did not err by disregarding the VE's testimony responding to hypotheticals based on their opinions.  The ALJ was only obligated to reasonably incorporate in his hypothetical all of Cantu's disabilities that he recognized.  *See Boyd v. Apfel*, 239 F.3d 698, 707 (5th Cir. 2001).  Because the ALJ's hypothetical incorporated his RFC determination, the hypothetical was complete, and the ALJ's step five finding is supported by substantial evidence.

\*    \*    \*

For the reasons explained, the Commissioner's decision is

AFFIRMED.

October 28, 2015.

SIDNEY A. FITZWATER
UNITED STATES DISTRICT JUDGE

- 19 -